## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PREMIUM ALLIED TOOL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 2527 |
| | ) | |
| ZENITH ELECTRONIC CORPORATION and | ) | Judge Kennelly |
| ZENITH ELECTRONICS CORPORATION OF | ) | |
| TEXAS, | ) | Magistrate Judge Cox |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANTS ZENITH ELECTRONICS CORPORATION AND ZENITH ELECTRONICS CORPORATION OF TEXAS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff Premium Allied Tool, Inc.'s ("PAT's") claim that Defendants Zenith Electronics Corporation and Zenith Electronics Corporation of Texas (collectively, "Zenith") breached the Indemnification and Escrow Agreement fails at the outset because PAT has not alleged that Zenith breached any representation, warranty, or covenant – a fundamental prerequisite to the indemnification PAT seeks.

Moreover, even if it were to amend its Complaint to allege such a misrepresentation, PAT's breach of contract claim is fundamentally flawed because PAT seeks to recover expenses that are not proper "Escrow Claims" under the plain, unambiguous language of the Indemnification and Escrow Agreement. Indeed, that Agreement provides that PAT may recover "Escrow claims" for "custom duties or taxes" only. The documents PAT attaches to its Complaint confirm, however, that PAT seeks to recover different kinds of expenses entirely.

Finally, to the extent PAT seeks to re-characterize its "Escrow Claim" as a general indemnity claim, any such re-characterization cannot save PAT's Complaint because

general indemnity claims are time-barred. Under the Indemnification and Escrow Agreement, PAT was required to assert general indemnity claims within two years of the February 26, 1999 closing date for the underlying transaction. PAT first asserted its claim on November 1, 2007, which is more than six years too late.

Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), because PAT does not state a claim for breach of the Indemnification and Escrow Agreement, PAT's Complaint should be dismissed in its entirety with prejudice.

## BACKGROUND

On February 26, 1999, PAT purchased from Zenith certain production facilities owned by Zenith's subsidiary Electropartes de Matamoros S.A. de C.V. and located in Matamoros, Mexico. (Compl. ¶¶ 7-8.) PAT and Zenith structured the transaction as a stock purchase deal, executing a Stock Purchase Agreement as well as a separate Indemnification and Escrow Agreement. (*Id.* ¶¶ 9-10.) PAT attached to the Complaint as Exhibits A and B the Stock Purchase Agreement and the Indemnification and Escrow Agreement.[1]

In connection with the Indemnification and Escrow Agreement, Zenith agreed, "[s]ubject to the limitations hereinafter set forth," to provide certain specific indemnities to PAT. (Compl. Exh. B.) Pursuant to Section 2(a) of the Indemnification and Escrow Agreement, Zenith ("the Seller") agreed to indemnify PAT ("the Buyer")

> against and in respect of any and all losses, liabilities, deficiencies, penalties, fines, costs, damages and expenses whatsoever (including, without limitation, reasonable professional fees and costs of investigation, litigation, settlement, judgment and interest) (collectively, "Losses") actually suffered or incurred by Buyer arising from or by reason of any material breach of any of the

---

[1] Documents PAT attached to its Complaint, including the Stock Purchase Agreement and the Indemnification and Escrow Agreement, are deemed "a part of the complaint" and may be considered in the context of a motion to dismiss. *See Moranski v. Gen Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005) (citing Fed. R. Civ. P. 10(c)).

> representations, warranties or covenants made by Sellers in the
> Stock Purchase Agreement . . .

(*Id.* Exh. B, § 2(a), pp. 1-2.)  The Indemnification and Escrow Agreement provides that this general indemnity for losses arising from "any material breach of any of the representations, warranties or covenants . . . in the Stock Purchase Agreement" expires two years after the closing date for the transaction – *e.g.*, February 26, 2001.  (*Id.*, Exh. B, § 2(a), p. 2.)

Beyond the general indemnity, Zenith also agreed, pursuant to sub-sections (i) through (iv), to indemnify PAT with respect to four additional, specific items.  (Compl. Exh. B, § 2(a)(i)-(iv), p. 2.)  In particular, Zenith agreed to indemnify PAT for:

> any custom duties or taxes owed by Eletropartes de Matamoros
> S.A. de C.V. ("Electropartes") relating to periods prior to Closing
> Date (the "Custom Duties") in connection with or arising from any
> Open Pedimentos (as defined in Section 2(d) below) . . .

(*Id.* Exh. B, § 2(a)(i).)  As Section 2(d) of the Indemnification and Escrow Agreement notes, such custom duties or taxes could have come due as Open Pedimentos were closed.  (Compl. Exh. B, § 2(d), p. 5.)

Besides the indemnification for (i) "any custom duties or taxes owed," Zenith further agreed to indemnify PAT for (ii) certain taxes and employee profit sharing taxes, (iii) certain payroll taxes, and (iv) losses related to specific litigation matters.  (*Id.* Exh. B, § 2(a)(ii)-(iv).)  The Indemnification and Escrow Agreement specifies that claims for these four specific indemnities "shall each be referred to as an 'Escrow Claim' . . . "  (*Id.* Exh. B, § 2(a), p. 2.)

Section 3 of the Indemnification and Escrow Agreement required Zenith to deposit funds to establish four separate Escrow Accounts.  (Compl. Exh. B, § 3, pp. 6-7.)  The Agreement specifies that "the Escrow proceeds shall only be withdrawn by the Escrow Agent to satisfy Escrow Claims."  (*Id.* Exh. B, § 3, p. 6.)  The Agreement then lists the four separate Escrow Accounts, including "$1,003,000 which may be withdrawn solely to satisfy Sellers'

obligations with regard to Custom Duties (the 'Custom Duties Escrow')". (*Id.*) Finally, Section 3 of the Indemnification and Escrow Agreement repeats that "each Escrow Account . . . shall be used solely to pay the Escrow Claims for which such Escrow was established and may not be used to pay other Escrow Claims or general indemnity claims." (*Id.* Exh. B, § 3, p.7.)

On November 1, 2007 – more than eight years after the transaction closed – PAT submitted a purported claim under the Indemnification and Escrow Agreement. (Compl. ¶ 14.) PAT attached to the Complaint as Exhibit C a copy of this purported claim. Specifically, PAT requested that Zenith indemnify PAT for $1,423,900 in "expenses" allegedly incurred by PAT relating to Open Pedimentos:

> The Escrow Claim [sic] asserted by this Indemnity Notice relates to expenses incurred by Buyer in connection with closing Open Pedimentos. . . .
>
> After the Closing, for a short period of time Sellers unsuccessfully attempted to close the Open Pedimentos. Thereafter, Buyer continued working diligently to close the Open Pedimentos. By early 2007, all the Open Pedimentos were closed. As detailed in the summary attached as <u>Exhibit "A"</u> Buyer incurred $1,423,900 in costs and expenses to in order to close the Open Pedimentos.

(*Id.* Exh. C, pp. 1-2.) None of PAT's alleged expenses included custom duties or taxes. Instead, according to the summary it provided, PAT's alleged expenses included salaries and benefits for employees working on the Open Pedimentos, broker fees, travel expenses for PAT executives, and losses incurred by PAT while the plant Matamoros plant was kept open so that the Open Pedimentos could be resolved. (*Id.* Exh. C, p. 4.)

Zenith responded to PAT's claim on December 11, 2007, explaining that it was not a proper "Escrow Claim" under the Indemnification and Escrow Agreement. (Compl. ¶ 15, Exh. D.) On May 2, 2008, PAT filed suit, alleging that Zenith had breached the Indemnification

and Escrow Agreement (Count I) and seeking a declaratory judgment and specific performance under the Indemnification and Escrow Agreement (Count II).  (*Id.* ¶¶ 17-32.)

## ARGUMENT

PAT's Complaint must be dismissed "if it appears beyond doubt that [PAT] cannot prove any set of facts that would entitle it to relief."  *Help At Home, Inc. v. Medical Capital, LLC*, 260 F.3d 748, 752 (7th Cir. 2001).  At the motion to dismiss stage, this Court should "accept all of the well-pleaded factual allegations in [PAT's] complaint as true and draw all reasonable inferences in favor of [PAT]."  *Id.*  If the facts alleged by PAT are inconsistent with its claim for relief, however, PAT's Complaint must be dismissed.  *See Sears Roebuck and Co. v. Emerson Elec. Co.*, No. 02-C-5771, 2003 WL 60573, at *9 (N.D. Ill. Jan. 7, 2003) (Kennelly, J.) ("A plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in the complaint.").

Under Illinois law,[2] "an indemnity agreement is a contract and therefore should be interpreted in a manner that gives effect to the intention of the parties."  *United Fire and Cas. Co. v. Bartlett Bituminous Asphalt, LLC*, No. 06C996, 2008 WL 373219, at *6 (N.D. Ill. Feb. 12, 2008) (citation omitted).  "The language is to be given its plain and ordinary meaning unless it is ambiguous."  *Id.* (citation omitted).

The interpretation of an unambiguous contract is a question of law for the court.  *See Gerow v. Rohm and Haas Co.*, No. 00-C-6538, 2001 WL 1159174, at *2 (Sept. 28, 2001) (Kennelly, J.) (*citing Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, Inc.*, 212 F.3d 373, 377 n.1 (7th Cir. 2000)).  If the relevant contractual provisions

---

[2]  Both the Stock Purchase Agreement and the Indemnification and Escrow Agreement provide that Illinois law governs any dispute arising under those agreements.  (Compl. Exh. A, § 9.7, p. 21; Exh. B, § 9(a), p. 11.)  Thus, this Court should apply Illinois law when interpreting the contractual provisions underlying PAT's claims.  *See Brunswick Leasing Corp. v. Wis. Cent. Ltd.*, 136 F.3d 521, 527 (7th Cir. 1998).

"unambiguously show that the relief requested is not warranted, the Court will dismiss the plaintiff's claim." *Cement Masons Pension Fund, Local 803 v. Everhard Concrete Constr., Inc.*, No. 00-C-5537, 2001 WL 1593150, at *2 (N.D. Ill. Dec. 12, 2001) (Kennelly, J.).

Significantly, a contract is ambiguous "'only if the language used is reasonably or fairly susceptible to having more than one meaning . . . A contract is not rendered ambiguous simply because the parties do not agree on the meaning of its terms.'" *Gerow*, 2001 WL 1159174, at *2 (citation omitted; ellipsis in original). *See also Great America Leasing Corp. v. Cozzi Iron & Metal, Inc.*, 76 F.Supp.2d 875, 878 (N.D. Ill. 1999) ("Illinois uses a 'four corners' rule in the interpretation of contracts, holding that 'if the language of a contract appears to admit of only one interpretation, the case is indeed over.'").

## I.    PAT is not entitled to any indemnification because it has not alleged that Zenith breached any representation, warranty, or covenant.

Under the Indemnification and Escrow Agreement, PAT can only obtain indemnification for losses it suffered "arising from or by reason of any material breach of any of the representations, warranties or covenants made by Sellers in the Stock Purchase Agreement". (Compl. Exh. B, § 2(a), pp. 1-2.)    But PAT does not allege that Zenith breached any representations, warranties, or covenants in the Stock Purchase Agreement.  Instead, PAT alleges simply that Zenith breached the Indemnification and Escrow Agreement by refusing to accept PAT's purported escrow claim.  (Compl. ¶ 21.)

Because PAT does not allege that Zenith breached any representations, warranties, or covenants in the Stock Purchase Agreement, PAT has not alleged facts showing it is entitled to indemnification.  Plaintiff's complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *United Labs. v. Savaiano*, No. 06-C-1442, 2007 WL 4162808, at *1 (Nov. 19, 2007) (*quoting Bell Atlantic Corp. v. Twombly*, 127 S.Ct.

1955, 1969 (2007)). Since Plaintiff has made no allegation that Zenith breached any representation, warranty or covenant that might give rise to indemnification, PAT's Complaint fails to state a claim for breach of contract, declaratory judgment, or specific performance.[3]

**II.    Even if PAT amended its Complaint to allege breach of a representation, warranty, or covenant by Zenith, PAT could not make an "Escrow Claim" because PAT concedes it has not paid any custom duties or taxes.**

The Indemnification and Escrow Agreement makes clear that, with respect to the Open Pedimentos issue, PAT can only recover "custom duties or taxes" from the Escrow Account and not other expenses. Section 2(a)(i) specifically provides that PAT can recover "any *custom duties or taxes* owed . . . in connection with or arising from any Open Pedimentos . . . " (Compl. Exh. B, § 2(a)(i).) Further, Section 2(a)(i) does not refer to any other kind of expenses.

To the contrary, the Indemnification and Escrow Agreement emphasizes that the Escrow Account established to pay custom duties or taxes *cannot* be used to pay other expenses. Indeed, the Agreement notes that the $1,003,000 deposited to pay custom duties or taxes "may be withdrawn solely to satisfy Sellers' obligations with regard to Custom Duties (the 'Custom Duties Escrow')". (*Id.*) Moreover, the Agreement states that "each Escrow Account . . . shall be used solely to pay the Escrow Claims for which such Escrow was established and may not be used to pay other Escrow Claims or general indemnity claims." (*Id.* Exh. B, § 3, p.7.)

PAT does not allege that it seeks to recover custom duties or taxes. Indeed, the documents PAT attaches to its Complaint affirmatively establish that PAT does ***not*** seek to recover custom duties or taxes. (Compl. Exh. C, pp. 1-2, 4.) Instead, PAT seeks to recover various other expenses it allegedly incurred in resolving the Open Pedimentos, such as salaries

---

[3] Because PAT's breach of contract claim fails, PAT's claim for declaratory judgment and specific performance premised on the same theory of liability also fails. *See, e.g.*, *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F.Supp.2d 231, 249-250 (S.D.N.Y. 2006) (dismissing breach of contract and declaratory judgment claims: "the [declaratory judgment] claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action. Accordingly, the declaratory judgment claim is dismissed").

and benefits for employees working on the Open Pedimentos, broker fees, travel expenses for PAT executives, and losses incurred by PAT while the plant Matamoros plant was kept open so that the Open Pedimentos could be resolved.  (*Id.* Exh. C, p. 4.).

Because its Complaint makes clear it does not seek to recover custom duties or taxes but instead other expenses which are not recoverable as an "Escrow Claim" under Section 2(a)(i), PAT's claims fail under the plain language of the Indemnification and Escrow Agreement.  *See*, *e.g.*, *Cement Masons Pension Fund, Local 803*, 2001 WL 1593150, at *2 (granting motion to dismiss because the relevant contractual provision contained "no ambiguity" and "its plain language refutes [the plaintiff's] claim").

**III.    PAT cannot make an "Escrow Claim" for expenses other than custom duties or taxes.**

In its Complaint, PAT tries to justify its request for expenses other than custom duties or taxes by citing the general indemnity afforded by Section 2(a) of the Indemnification and Escrow Agreement.  (*See*, *e.g.*, Compl. ¶¶ 25, 31.)  Specifically, PAT points to the first paragraph of Section 2(a), which describes a general indemnity by Zenith for breaches of representations, warranties or covenants in the Stock Purchase Agreement.  (*Id.* ¶ 25.)  PAT asserts that this general indemnity covers "all losses, liabilities, deficiencies, penalties, fines, costs, damages, and expenses whatsoever (including without limitation, reasonable professional fees and costs of investigation, litigation, settlement, judgment and interest) (collectively, 'Losses') . . . " (*Id.* Exh. B, § 2(a), p. 1.)

But PAT's argument that it can recover other sorts of expenses from the Escrow Account is contrary to the plain language of the Indemnification and Escrow Agreement.  The Agreement provides that PAT can recover money from the Escrow Account only for true "Escrow Claims":  "[T]he Escrow proceeds shall only be withdrawn by the Escrow Agent to

satisfy *Escrow Claims*." (Compl. Exh. B, § 3, p. 6 (emphasis added).) Indeed, the Agreement emphasizes this point by repeating it: "Each Escrow Account . . . shall be used *solely to pay the Escrow Claims* for which such Escrow was established and *may not be used to pay* . . . *general indemnity claims*." (*Id.* Exh. B, § 3, p. 7 (emphasis added).)

Moreover, the Indemnification and Escrow Agreement makes clear the general indemnity described in the first paragraph of Section 2(a) is *not* an "Escrow Claim." Instead, the Agreement specifies that only those claims for indemnification made under sub-sections (i) through (iv) are considered "Escrow Claims." (Compl. Exh. B, § 2(a), p. 2 (noting that only "claim[s] for indemnification pursuant to Sections 2(a)(i)-(iv) shall . . . be referred to as an 'Escrow Claim,' . . . ").) Thus, PAT's attempt to import into Section 2(a)(i) the broad definition of "Losses" from the first paragraph of Section 2(a) does not succeed, and PAT cannot point to this definition of "Losses" to save its purported "Escrow Claim."

## IV. PAT cannot recover its expenses pursuant to the general indemnity because any such claim would be time-barred.

The only provision of the Indemnification and Escrow Agreement that could conceivably reach the types of expenses that PAT seeks to recover here is the general indemnity described in the first paragraph of Section 2(a), but the Agreement makes clear that claims pursuant to this general indemnity must be made within two years of the closing. Specifically, the Agreement provides that Section 2(a)'s general indemnity "shall expire on the second anniversary of the Closing Date". (Compl. Exh. B, § 2(a), p. 2.)

Because PAT asserted its purported claim on November 1, 2007 – more than six years after the February 26, 1999 Closing Date – PAT plainly cannot rely on the general indemnity to justify its claims. *See*, *e.g.*, *Cordiant MN, Inc. v. David Cravit & Assoc., Ltd.*, No. 96-C-4276, 1997 WL 534308, at *11 (N.D. Ill. Aug. 19, 1997) (granting motion to dismiss:

"This court, however, finds that the time limitation in Section 9.4 does operate to bar Cravit's claim in count III for breach of contract/indemnification. As stated, the language of Section 9.4 unambiguously provides that no claim for indemnification under the Agreement may be made by either party after eighteen months following the Closing Date.").

## **CONCLUSION**

In sum, because PAT has failed to allege that Zenith breached any representation, warranty, or covenant, because it seeks expenses which do not constitute "Escrow Claims," and because PAT's claims are otherwise time-barred, Zenith respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice pursuant to Rule 12(b)(6).

Dated: September 18, 2008                    Respectfully submitted,


  /s Andrew Johnstone
Dane A. Dobny (ddrobny@winston.com)
Andrew M. Johnstone (ajohnstone@winston.com)
Kirtan S. Mehta (kmehta@winston.com)
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

Attorneys for Defendants Zenith Electronics
Corporation and Zenith Electronics Corporation of
Texas

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that copies of the foregoing were served on this

18th day of September 2008 by Messenger Delivery, Federal Express and/or E-Mail as follows:

Edward S. Weil
Kathleen Surowiec
DYKEMA
180 North LaSalle Street, Suite 2700
Chicago, Illinois 60601

Counsel for Premium Allied Tool, Inc.


    /s Andrew Johnstone