IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PREMIUM ALLIED TOOL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08 C 2527 |
| ) | |
| ZENITH ELECTRONICS CORP. and ) | |
| ZENITH ELECTRONICS CORP. OF TEXAS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Premium Allied Tool, Inc. ("PAT") brought this diversity action against Zenith Electronics Corporation and Zenith Electronics Corporation of Texas (collectively "Zenith"), claiming they breached a contract. Zenith has moved to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court grants Zenith's motion.

PAT purchased from Zenith certain production facilities located in Matamoros, Mexico. As part of this purchase, which PAT completed on February 26, 1999, the parties executed a stock purchase agreement and an indemnification and escrow agreement. Zenith then established four escrow accounts, each with the purpose of covering specific types of indemnification claims.

On November 1, 2007, PAT submitted a purported indemnification claim to Zenith in the amount of $1,423,900. The claim involved expenses PAT incurred in attempting to close what are referred to as "open pedimentos." A pedimento is a

customs declaration associated with items shipped to and from Mexico; an open pedimento exists when raw materials are shipped to Mexico but no finished goods associated with the raw materials are shipped back to the United States. When an open pedimento exists, a customs duty is assessed.

On December 11, 2007, Zenith notified PAT that it disputed the escrow claim. PAT then filed this lawsuit. In count one, PAT asks the court to find Zenith liable for breach of the indemnification agreement. In count two, PAT asks the Court to direct the escrow agent established under the indemnification agreement to disburse monies in the escrow account to PAT in an amount sufficient to cover its claim.

When considering a motion to dismiss for failure to state a claim, the Court accepts as true the complaint's factual allegations and draws reasonable inferences in the plaintiff's favor. *See, e.g., Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 617 (7th Cir. 2007). To avoid dismissal, the allegations need only "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (internal quotation marks and citation omitted).

PAT's claims depend upon the interpretation of the indemnification agreement. The interpretation of an unambiguous contract is an issue of law for the Court; the interpretation of an ambiguous contract is a question for the trier of fact. *Metalex Corp. v. Uniden Corp. of Am.,* 863 F.2d 1331, 1333 (7th Cir. 1988). A contract is ambiguous if more than one interpretation reasonably exists. *William Blair & Co., LLC v. FI Liquidation Corp.,* 358 Ill. App. 3d 324, 334, 830 N.E.2d 760, 769 (2005). Section 2(a) of the indemnification agreement reads, in relevant part, as follows:

> Subject to the limitations hereinafter set forth in this Section 2, during the Indemnification Period (as hereinafter defined), [Zenith] shall, jointly and severally, protect, defend, hold harmless and indemnify [PAT], and its officers, directors, stockholders, and employees and agents, and its successors and assigns from, and against and in respect of any and all losses, liabilities, deficiencies, penalties, fines, costs, damages and expenses whatsoever (including, without limitation, reasonable professional fees and costs of investigation, litigation, settlement, judgment and interest) (collectively "Losses") actually suffered or incurred by [PAT] arising from or by reason of any material breach of any of the representations, warranties, or covenants made by [Zenith] in the Stock Purchase Agreement, including, without limitation, the following:
>
>> (i) any custom duties or taxes owed by Electropartes de Matamoros S.A. de C.V. ("Electropartes") relating to periods prior to the Closing Date (the "Customs Duties") in connection with or arising from any Open Pedimentos (as defined in Section 2(d) below) . . . .

The contract goes on to provide that Zenith's indemnification obligation under section 2(a) expires on the second anniversary of the closing date, except for "Escrow Claim[s]," defined to include only claims based on subsections (i) through (iv) of section 2(a).

In its motion to dismiss, Zenith relies on two arguments: there was no breach of a representation, warranty or covenant as required by the indemnification agreement, and even if there was a breach, PAT's claim is time–barred.

Zenith's first argument is that section 2(a) of the indemnification agreement only protects PAT from losses attributed to Zenith's breach of representations in the stock purchase agreement. Because Zenith made no representation concerning pedimentos in the stock purchase agreement, it contends, it is not required to indemnify PAT for expenses associated with the open pedimentos. Though Zenith is correct in arguing that the section 2(a) covers only breaches of representations made in the stock

3

purchase agreement, and in pointing out that the stock purchase agreement does not reference open pedimentos, that does not mean liabilities relating to open pedimentos are not covered by section 2(a). As PAT correctly points out, a contract must be read as a whole, with its terms deriving their meaning from their context. *See, e.g., Bd. Of Trade of City of Chicago v. Dow Jones & Co.,* 98 Ill. 2d 109, 122, 456 N.E.2d 84, 90 (1983). Section 2(a), when read together with section 2(a)(i), makes it clear that the covered breaches "include" certain customs duties or taxes connected with open pedimentos. Because the liabilities covered by section 2(a)(i) are expressly "includ[ed]" in the overall category of covered liabilities arising from breaches of representations in the stock purchase agreement, it makes no sense to read the general provision in section 2(a) – as PAT proposes – in a way that would exclude the very types of liabilities covered by section 2(a)(i). The Court sees no ambiguity in this provision.

Zenith is correct, however, that PAT's claim is outside the scope of section 2(a)(i). Section 2(a)(i) requires Zenith to indemnify PAT for "any custom duties or taxes … arising from any Open Pedimentos." But PAT is not seeking indemnification for customs duties or taxes. Rather, it is seeking reimbursement for expenses it incurred to avoid paying custom duties or taxes. Such expenses are not covered by the express terms of section 2(a)(i). Again, there is no ambiguity.

PAT argues that the expenses for which PAT seeks indemnification are covered by the general language in section 2(a) of the indemnification agreement. But as Zenith argues, although indemnification claims covered by section 2(a)(i) are not subject to a time limitation, claims made under section 2(a) must be made within two years of the closing date, February 26, 1999. The claims PAT asserts in this lawsuit were made far

more than two years after the closing date.

PAT contends that although section 2(a) entitles it to indemnification for expenses incurred to avoid customs duties relating to open pedimentos, section 2(a)(i) should be read to provide the time period within which it is allowed to bring that sort of claim. But if section 2(a)(i) does not provide a basis for the claim PAT asserts in this case – as the Court has ruled – PAT cannot rely on the absence of a time limitation on claims under section 2(a)(i) to save its claim. Again, there is no ambiguity. Because PAT's indemnification claim is permitted, if at all, only by section 2(a) and not by section 2(a)(i), and because Zenith's obligation to indemnify PAT for claims made under section 2(a) has expired, PAT's breach of contract claim is time-barred.

PAT also argues that it is entitled to relief because it incurred the expenses in question in attempting to limit Zenith's liability for open pedimentos. It may be true, as PAT states, that PAT could have allowed the Mexican government to assess customs taxes and duties associated with open pedimentos and then sought indemnification under section 2(a)(i). But that is beside the point; the contract says what it says, and expenses PAT says it incurred in trying to limit Zenith's liability are not covered by section 2(a)(i). It is conceivable that PAT may be able to assert some sort of a claim other than a breach of contract claim – for example, a claim for unjust enrichment – but at this point it has asserted no such claim.

**Conclusion**

For the reasons stated above, the Court grants defendant's motion to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted [docket no. 19]. The Court will convert this order to a final judgment unless plaintiff files, on or

before December 24, 2008, a motion for leave to file an amended complaint, to be noticed for presentment during the week of January 5, 2009.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 10, 2008