**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **PREMIUM ALLIED TOOL, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 08 C 2527** |
| ) | |
| **ZENITH ELECTRONICS CORP. and** ) | |
| **ZENITH ELECTRONICS CORP. OF TEXAS,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Court previously dismissed, for failure to state a claim, the complaint of plaintiff Premium Allied Tool, Inc. (PAT) against defendants Zenith Electronics Corporation and Zenith Electronics Corporation of Texas (collectively Zenith). *Premium Allied Tool, Inc. v. Zenith Elec. Corp.*, No. 08 C 2527, 2008 WL 5170853 (N.D. Ill. Dec. 10, 2008). PAT has now filed an amended complaint against Zenith, including claims for breach of contract (count one), declaratory judgment and specific performance regarding the same contract (count two), and two additional claims of declaratory judgment (counts three and four).

Zenith has moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court grants Zenith's motion in part and denies it in part.

**Facts**[1]

When considering a motion to dismiss, the Court accepts as true the complaint's factual allegations and draws reasonable inferences in favor of the plaintiff. *See, e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 617 (7th Cir. 2007). The Court treats exhibits to a complaint as part of the complaint. Fed. R. Civ. P. 10(c). The Court is not bound by PAT's characterizations of the exhibits attached to its complaint and can independently examine those exhibits for inconsistencies between them and PAT's allegations. *See, e.g.*, *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Rosenblum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

PAT purchased from Zenith certain production facilities located in Matamoros, Mexico. As part of this purchase, which PAT completed on February 26, 1999, the parties executed a stock purchase agreement and an indemnification and escrow agreement. Zenith then established four escrow accounts, each for the purpose of covering specific types of indemnification claims. The escrow accounts are controlled and administered by an escrow agent appointed by the parties in the indemnification and escrow agreement.

One of the escrow accounts was created to cover any custom duties or taxes imposed as a result of "open pedimentos." A pedimento is a customs declaration associated with items shipped to and from Mexico. An open pedimento exists when raw materials are shipped to Mexico but no finished goods associated with the raw materials are shipped back to the United States. When an open pedimento exists, a

---

[1]The Court presumes general familiarity with its earlier decision in this matter.

customs duty is assessed.  At the time the parties executed their contracts, a large number of pedimentos were open.  After the sale to PAT, Zenith personnel worked to help PAT close the open pedimentos.  Those efforts, however, were unsuccessful, and Zenith abandoned its efforts without resolving the open pedimentos.  PAT worked to close the pedimentos unsuccessfully for several years until it hired additional personnel. PAT closed all outstanding pedimentos by early 2007.

Section 2(a) of the indemnification agreement reads, in relevant part, as follows:

Subject to the limitations hereinafter set forth in this Section 2, during the Indemnification Period (as hereinafter defined), [Zenith] shall, jointly and severally, protect, defend, hold harmless and indemnify [PAT], and its officers, directors, stockholders, and employees and agents, and its successors and assigns from, and against and in respect of any and all losses, liabilities, deficiencies, penalties, fines, costs, damages and expenses whatsoever (including, without limitation, reasonable professional fees and costs of investigation, litigation, settlement, judgment and interest) (collectively "Losses") actually suffered or incurred by [PAT] arising from or by reason of any material breach of any of the representations, warranties, or covenants made by [Zenith] in the Stock Purchase Agreement, including, without limitation, the following:

(i) any custom duties or taxes owed by Electropartes de Matamoros S.A. de C.V. ("Electropartes") relating to periods prior to the Closing Date (the "Customs Duties") in connection with or arising from any Open Pedimentos (as defined in Section 2(d) below) . . . .

Am. Compl., Ex. B § 2(a).  That contract also provided that Zenith's indemnification obligations expired two years after execution, except for particular specified claims that continued to exist for "an indefinite period of time."  *Id.*  Custom duties and taxes resulting from open pedimentos were not subject to the two-year limitation.  The indemnification agreement provided that the escrow account relating to custom duties and taxes "shall terminate upon the earlier to occur of (A) the payoff or resolution of any outstanding liability with respect to the Customs Duties . . . ."  *Id.* § 7(a)(i).  Upon

3

expiration of an escrow account, the escrow agent must pay unused funds to Zenith, but "shall continue to retain in the Escrow Funds all such amounts under unresolved or unsettled claims then outstanding . . . ." *Id.* § 7(b).

On November 1, 2007, PAT submitted an indemnification claim to Zenith in the amount of $1,423,900. The claim involved expenses PAT incurred in attempting to close open pedimentos. It was not a claim for payment of custom duties or taxes. On December 11, 2007, Zenith notified PAT that it disputed the escrow claim. PAT then filed this lawsuit.

In count one of the amended complaint, PAT asks the Court to find Zenith liable for breach of the indemnification agreement. In count two, PAT asks the Court to declare that PAT is entitled to indemnification and to direct the escrow agent to disburse monies in the escrow account to PAT in an amount sufficient to cover its claim. Count two is based on the same alleged contractual breaches detailed in count one. Count three seeks a declaration that funds currently deposited in one of the escrow accounts must remain there until 2012. Count four seeks a declaration that Zenith Electronics Corporation does not have a right to claim any funds deposited in the escrow accounts.

## Discussion

The Seventh Circuit has emphasized that even after the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955 (2007), federal courts continue to adhere to a notice-pleading standard. *E.g.*, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083-83 (7th Cir. 2008). "A plaintiff must still provide only enough detail to

give the defendant fair notice of what the claim is and the grounds upon which it rests . . . ." *Id.* at 1083 (quotation omitted).

## 1. Counts one and two

The Court dismissed the original versions of counts 1 and 2 after concluding that the plain, unambiguous language of the parties' contracts did not permit a claim for expenses or other losses incurred in minimizing or avoiding custom duties and taxes resulting from open pedimentos. *Premium Allied Tool, Inc.*, 2008 WL 5170583, at *2-3. PAT has not presented the Court with any authority indicating that the original decision was erroneous. The plain language of the indemnification agreement imposes a two-year limitation period on actionable claims for indemnification other than those specifically carved out to last indefinitely. Expenses or other losses incurred to minimize taxes or custom duties were not carved out this manner; rather, the agreement specifies an indefinite period to claim indemnification for payment of custom duties or taxes resulting from open pedimentos that were actually assessed.

PAT contends that counts 1 and 2, as amended, state valid claims because it has made additional allegations regarding the parties' course of conduct. Specifically, PAT points to the period when Zenith sent employees to help resolve (unsuccessfully) open pedimentos to demonstrate that Zenith was responsible for closing open pedimentos. Even if Zenith attempted to close open pedimentos, however, that does not alter the plain language of the agreement limiting claims for indemnification to a two-year period unless otherwise specified. Second, in light of the unambiguous language in the contract regarding the time to make claims for indemnification, the

parties' course of conduct is irrelevant. *See, e.g.*, *Alexander v. City of Evansville*, 120 F.3d 723, 727 (7th Cir. 1997) ("If there is some doubt about the sense or meaning of a contract, the court may consult evidence about its formation or the parties' course of dealing . . . ."); *LaSalle Nat. Bank Assoc. v. Gabayzedeh*, No. 02 C 734, 2003 WL 134997, at *6 (N.D. Ill. Jan. 17, 2003) ("'Where a contract is clear and unambiguous, however, the conduct of the parties cannot be used to prove that the contract means something other than it says.'") (quoting *Uscian v. Blacconeri*, 35 Ill. App. 3d 80, 83, 340 N.E.2d 618, 621 (1975)).

The plain and unambiguous language of the indemnification and escrow agreement precludes the claims PAT attempts to set forth in counts one and two. Allegations regarding the parties' conduct cannot alter that fact. Accordingly, the Court dismisses counts one and two.

## 2. Count three

Count three concerns when the escrow account relating to custom duties and taxes terminates under the escrow and indemnification agreement. Zenith contends that count three is impermissibly speculative because there is no indication that the Mexican authorities will levy any duties or taxes even though they are able to do so with respect to the formerly open pedimentos until as late as 2012. That contention, however, fails to address the provisions in the escrow and indemnity agreement that deal with termination of the escrow accounts.

As noted above, the agreement specifies that the escrow agent must refund unused escrow funds to Zenith at the time of escrow termination, unless those funds

relate to "unresolved or unsettled claims then outstanding."  Am. Compl., Ex. B § 7(b).

Escrow termination occurs following "the payoff or resolution of any outstanding liability

with respect to Custom Duties."  *Id.* § 7(a)(i).  The agreement does not define the terms

"outstanding liability" or "unresolved or unsettled claim then outstanding."  PAT notes

that the language in section seven of the agreement could mean that the escrow does

not terminate until all possible outstanding liabilities relating to custom duties or taxes

resulting from open pedimentos have been resolved.  Such liabilities may be incurred

until 2012.  The indemnity agreement is not unambiguous on its face with respect to

when escrow termination occurs.  PAT's construction is not necessarily the correct

construction of the contract.  It is, however, a reasonable interpretation and sufficient to

state a claim for declaratory relief.  Accordingly, the Court declines to dismiss count 3.

**3.    Count four**

In count four, PAT seeks a declaration that Zenith Electronics Corporation does

not have a right to claim any funds deposited in the escrow accounts.  The basis for this

claim is that Zenith Electronics Corporation converted itself into a limited liability

company (LLC) in December 2007.

Zenith contends that Zenith Electronics Corporation was incorporated and

converted to an LLC in Delaware.  Under Delaware law, conversion of a corporation to

an LLC does not affect the former corporation's rights or liabilities, and the LLC is

deemed to be the same entity as the former corporation.  Del. Code Tit. 6 § 18-214(f)-

(g).  Moreover, section 9(d) of the indemnification and escrow agreement binds the

contracting parties' successors.  PAT does not dispute any of these contentions in

response to the motion.  Thus it appears that there is no basis for the declaratory relief

sought in count four.

PAT also questions whether Zenith Electronics LLC is the real party in interest to this case rather than Zenith Electronics Corporation. The citizenship of an LLC can have consequences affecting diversity jurisdiction. To that end, the Court ordered Zenith to supply citizenship information for Zenith Electronics LLC. Zenith has done so. Zenith Electronics LLC's only member is LG Electronics U.S.A., Inc. (LG). LG is incorporated in Delaware and has its principal place of business in Englewood Cliffs, New Jersey. Thus even if Zenith Electronics LLC is the real party in interest, this Court has subject matter jurisdiction on the basis of diversity of citizenship.

## Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss [docket no. 38] with respect to counts one, two, and four but denies the motion with respect to count three. Defendants are ordered to answer that claim by March 3, 2009. The case is set for status hearing on March 10, 2009 at 9:30 a.m. Counsel are directed to confer prior to that date to develop a proposed schedule for completing discovery.

MATTHEW F. KENNELLY
United States District Judge

Date: February 17, 2009